UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES RUSSELL SMITH, TDCJ No. 620944, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. |
| FNU JARAMILLO, RANDAL EASELEY, DUSTIN CLINKSCALE, JEFFREY MARTON, JIMMY BAGBY, QUIRINO MARISCAL, RACQUEL HASKINS, JAMIE BAKER, BRUCE ZELLER, JOE GRIMES, JOE NUNN, | § § § § § § § § § § § § | SA-05-CA-0713 NN |
| Defendants. | § § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING TEXAS ATTORNEY GENERAL TO ADVISE THE COURT**

Previously in this cause, I dismissed plaintiff Smith's claims against John Doe defendants; Smith's failure-to-protect claims against defendants Crooks and Ward; and Smith's claims that the defendants violated prison rules. In this order, I address a motion from defendants Easely, Clinkscale, Marton, Bagby, Mariscal, Haskins, Baker, Zeller, Grimes, and Nunn asking for summary judgment on Smith's failure-to-protect claim and his Fourteenth Amendment claim regarding the Gang Renouncement and Disassociation (GRAD) program. I have jurisdiction to decide the motion in light of the consent of the parties[1] under 28 U.S.C. § 636(c)(1). Summary judgement is appropriate if "the pleadings, depositions, answers to

---

[1] *See* Order, dated 11 April, 2006, docket entry #28 (directing reassignment of this cause to United States Magistrate Judge Nancy Stein Nowak).

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

## Nature of the Case

Smith is a state inmate committed to the custody of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ). Smith characterizes himself as a former gang member. The defendants are prison officials at various institutions where Smith has been incarcerated. Having detailed Smith's claims in my previous order (docket entry #42), I only briefly describe those claims in this order. The gist of Smith's claims is that the defendant prison officials failed to protect him from attacks by gang members. Pertinent here are incidents that occurred during his confinement at TDCJ's John Connally Unit and William C. Clements Unit. Smith alleges that defendants Easely, Clinkscale, and Marton (the Connally Unit defendants) failed to protect him from an assault from alleged members of the Mexican Mafia at the Connally Unit on August 30, 2003. Smith alleges that defendants Bagby, Mariscal, Haskins, Baker, Zeller, Grimes and Nunn (the Clements Unit defendants) failed to protect him from assault at the Clements Unit on November 5, 2004 and March 16, 2005. In addition, Smith alleges he was denied equal protection because TDCJ-CID told him that the GRAD program was reserved for white and Mexican inmates and that black inmates like himself are not admitted to the program.

## Smith's Burden in a Failure-to-Protect Claim

Under the Eighth Amendment, "'prison officials have a duty . . . to protect prisoners

---

[2] FED. R. CIV. P. 56(c).

from violence at the hands of other prisoners.'"[3]  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[4]  An official is deliberately indifferent to a substantial risk of harm to an inmate if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[5]  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ."[6]

Smith's Claims against the Connally Unit Defendants

The Connally Unit defendants maintain that they are entitled to summary judgment because no genuine issue of material fact exists about whether they had knowledge of a substantial risk of serious harm to Smith prior to the August 30, 2003 incident that serves as the basis of Smith's claims against the Connally Unit defendants.  In particular, these defendants assert that Smith cannot establish facts showing they were on notice of a well-founded, particularized threat against Smith and that they failed to protect Smith from the threat.  Although the failure to give advance notice is not necessarily dispositive of a failure-to-protect

---

[3]*Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citation omitted); *see Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

[4]*Farmer*, 511 U.S. at 828.

[5]*Farmer*, 511 U.S. at 837.

[6]*Id.* at 842.

claim,[7] Smith maintains that he advised prison officials that he feared attack by gang members and that the defendants failed to protect him from harm. Smith does not rely on a more general or obvious threat faced by all prisoners—he relies on a specific threat against himself.[8] The Connally Unit defendants and Smith rely on the same documentary evidence to support their positions—specifically, Smith's Step I Offender Grievance Form, dated August 10, 2003.

In that grievance, Smith complained about disciplinary action resulting from an incident that occurred on August 10, 2003 involving defendant prison guard Jaramillo. Smith discussed his version of the incident and complained about his past problems with Jaramillo. Smith characterized Jaramillo as a known gang member and stated that he had discussed his problems with Jaramillo with defendant Easely a few months earlier. Smith, however, did not suggest that his problems with Jaramillo stemmed from gang membership or express any fear of attack by prison gang members. Smith concluded by asking for an investigation into his complaints about Jaramillo. Notably, Smith did not complain about threats from gang members or threats from Jaramillo. Instead, he complained about problems stemming from his relationship with Jaramillo. Because Smith did not complain about threats from gang members or threats from Jaramillo, this evidence does not constitute notice that Smith faced a substantial risk of harm and does not raise a genuine issue of fact about whether the Connally Unit defendants knew that Smith faced a substantial risk of harm.

Other summary judgment evidence indicates that Smith did not give the Connally Unit

---

[7]*See id.* at 848.

[8]*See id.* at 843 (recognizing that Eighth Amendment liability might attach where all prisoners faced a substantial risk of serious damage to future health).

defendants notice that he feared an attack by gang members until after the August 30, 2003 incident—in particular, his response to his August 10, 2003 grievance. Smith received the following response to his August 10, 2003 grievance: "There is no evidence to substantiate your allegations of staff misconduct." Smith appealed the resolution of that grievance by filing a Step II Offender Grievance Form on October 16, 2003. In that appeal form, he stated that Jaramillo had a history of having inmates beaten by prison gang members, asserted that his life was in danger, and complained that he had been threatened by gang members. If true, this evidence would constitute notice that Smith may have faced a substantial risk of harm. This notice, however, occurred after the August 30, 2003 incident in which Smith maintains he was attacked by gang members. Thus, the evidence indicates that Smith did not give the Connally Unit defendants notice that he feared attack by gang members until after he was attacked.

     The Connally defendants rely on additional evidence to show that they did not know that Smith faced a substantial risk of harm until after the August 30, 2003 incident—specifically, the Step I Offender Grievance Form Smith filed on August 30, 2003. In the form, Smith complained about disciplinary action resulting from an August 30, 2003 incident Smith characterizes as an attack by members of the Mexican Mafia and the Connally defendants characterize as an altercation with another inmate. In that form, Smith complained that Jaramillo was trying to get him killed by gang members and asked for dismissal of the disciplinary action taken as a result of the August 30, 2003 incident. To the extent that this assertion constitutes notice that Smith faced a substantial risk of harm, the notice occurred after the August 30, 2003 incident. Because the notice occurred after the August 30, 2003 incident, the evidence does not raise a genuine issue of material fact about whether the Connally Unit defendants knew that Smith faced a substantial

risk of harm.

The Step II Offender Grievance Form that Smith filed in response to the Step I Grievance form he filed on August 30, 2003 also indicates that Smith did not notify the Connally Unit defendants that he feared attack by gang members until after the August 30, 2003 incident. Smith's August 30, 2003 Step I form reflects the following disposition:

> On 9/09/03, Connally Unit Classification Committee recommended you for a unit transfer due to the assault on August 17, 2003. There is no evidence to substantiate your allegations that Officer Jaramillo is affiliated with a Security Threat Group or has placed your life in danger. . . . There is no valid reason to overturn this case.

Smith appealed this resolution in a Step II Offender Grievance Form dated September 20, 2003. In the form, Smith clarified that the attack occurred on August 30, 2003—not August 17, 2003. He stated that August 17, 2003 was the day that Jaramillo and members of the Mexican Mafia threatened him. He further stated that he filed a Step I grievance on that day—August 17, 2003—informing prison officials that his life was in danger and why it was in danger. Smith characterized that grievance as his "first" grievance. If Smith filed a grievance on that day, it might constitute evidence that raises a genuine issue of material fact about whether the Connally Unit defendants knew that he faced a substantial risk of harm prior to the August 30, 2003 incident because August 17, 2003 precedes the incident. The record, however, does not include a grievance reflecting that date. The first grievance in the record is dated August 10, 2003. Smith did not complain that his life was in danger in the August 10, 2003 grievance. As a result, no documentary evidence exists that shows the Connally Unit defendants knew that Smith faced a substantial risk of serious harm. Without such evidence, the Connally Unit defendants are entitled to summary judgment on Smith's failure-to-protect claims.

<u>Smith's Claims against the Clements Unit Defendants</u>

The Clements Unit defendants maintain that they are entitled to summary judgment because no evidence exists about whether they were aware of any threat against Smith prior to November 5, 2004 or about whether they acted with deliberate indifference prior to March 16, 2005. The Clements Unit defendants rely on the Step I Offender Grievance Form that Smith filed in response to the November 5, 2004 incident to show that no genuine issue of material fact exists about whether they had notice that Smith faced a substantial risk of harm prior to that incident. Smith filed that form on November 10, 2004 and complained about an attack by his cell-mate who he characterized as a T.S. [Texas Syndicate] gang member. In that form, he expressed fear of future attack by gang members and asked prison officials to protect him by housing him with other ex-gang members. This evidence indicates that the Clements Unit defendants did not know that Smith faced a substantial risk of harm until November 10, 2005—five days after the November 5, 2004 incident.

Smith does not specifically address why the Clements Unit defendants should have known that he faced a substantial risk of harm prior to November 5, 2005. In his complaint, he alleged that he was transferred to the Clements Unit on November 4, 2005; that he was placed in the general population; and that he was attacked by a known gang member on November 5, 2004. He stated in his complaint that he was then placed in high security, had his case over-turned, and was returned to the general population. He stated that when defendant Grimes questioned him about what he would do if attacked again, he responded that he would defend himself, and was subsequently disciplined for threatening an unknown inmate. He stated that he was attacked by a gang member again on March 16, 2005.

In addition, Smith stated in his response to my interrogatories that upon arrival at the Clements Unit, defendants Grimes, Haskin, and Bagby questioned him about why he no longer claimed affiliation with the Mandingo Warrior gang, why the Mandingo Warriors attacked him at TDCJ's Ramsey Unit, and about the attack by the Mexican Mafia at the Connally Unit.  Smith, however, did not state that he told these defendants that he feared further attack.  Instead, he stated that he told the defendants that he had been ordered to remove his Mandingo Warrior tattoo and that the defendants told him they would write him up for self-mutilation if he tried to remove the tattoo.   He further stated that he was attacked on the following day by his cell-mate and that he received a disciplinary action for that incident.

Even considering the responses to my interrogatories, Smith presented no evidence that raises a genuine issue of material fact about whether the Clements Unit defendants knew that he was at risk for an attack by gang members prior to November 5, 2004.  Consequently, the Clements Unit defendants are entitled to summary judgment on Smith's complaints about the failure to protect him from attack on November 5, 2004.

The evidence does, however, raise a question of fact about whether some of the Clements Unit defendants knew that Smith faced a substantial risk of harm prior to the March 16, 2005 incident—in particular, defendants Mariscal, Bagby, Grimes and Nunn.  The November 10, 2004 Step I grievance form raises a question of fact because Smith expressed fear of future attack and asked for protection.  In that grievance, Smith indicated that he had talked with officers "Marical" and "Bagly" prior to submitting his formal grievance.  Smith further indicated that these officers stated that "[t]hey would look into it."  Notwithstanding Smith's spelling errors—"Marical" for "Mariscal" and "Bagly" for "Bagby"—this evidence raises a question of

8

fact about whether Mariscal and Bagby knew Smith faced a substantial risk of harm.

The record reflects that Smith received three responses to his Step I grievance. Defendant Grimes signed the first response on December 29, 2004. That response reads as follows: "Your complaint has been investigated. You will be housed [sic] next available cell in High Security. No further action warranted." Defendant Grimes signed the second response on January 6, 2005. That response reads as follows: "Your complaint has been investigated. On 12-23-04 you were seen by UCC and you were denied transfer. No further action warranted." Defendant Nunn signed the third response. That response was signed on January 10, 2005 and reads as follows: "Your complaint has been investigated. You were seen by UCC on 01-03-05 and denied transfer. You were given a custody change [sic] this should alleviate your problem. No further action required." These responses show that Grimes and Nunn were aware of Smith's concerns prior to the March 16, 2005 incident. As a result, this evidence raises a question of fact about whether Grimes and Nunn knew that Smith faced a substantial risk of harm. The record, however, contains no evidence that defendants Haskins, Baker, or Zeller were aware of Smith's concerns. Thus, no evidence exists that these defendants knew that Smith faced a substantial risk of harm. As a result, defendants Haskins, Baker, and Zeller are entitled to summary judgment on Smith's failure-to-protect claims.

Whether Evidence of Deliberate Indifference Exists

Even if a defendant prison official has knowledge that an inmate faces a substantial risk of harm, the defendant can be held liable only if he acts with deliberate indifference. Defendants Mariscal, Babgy, Grimes and Nunn maintain no evidence exists that they acted with deliberate indifference.

> [P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety,'" a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions."[9]

In support of their contentions, the defendants rely on the Step II grievance form that Smith filed on January 4, 2004.  In that form, Smith expressed concern for his future safety and implied that he sought admission to the GRAD program.  He asserted that he had made officials aware of a risk of serious harm to his safety.  The response to that appeal reads as follows: "Your concerns were addressed at the Step I level.  You have been moved to high security.  Further investigation reveals that you are listed as being investigated for disassociation [from gang affiliation], beginning on December 7, 2004.  This is a lengthy process; you will need to be patient."  The signature on the response is illegible, but the response is dated January 28, 2005.  The response shows that prison officials reacted to Smith's concerns that he was a risk for an attack by gang members—by moving him to high security housing and by considering him for the GRAD program.

      The defendants also rely on the Step II grievance that Smith filed on January 15, 2005.  In that form, Smith complained that the answer to his Step I grievance did not address any of the issues expressed in his grievance.  He stated that the main issue in his Step I was why his life was being intentionally placed in harm's way and why he could not be afforded the same protections as other ex-gang members.  The response to that appeal states as follows: "Appropriate action was taken at unit level.  You were granted a custody upgrade and a housing change.  If you still

---

[9]*Farmer*, 511 U.S. at 844-45 (internal citations omitted).

feel threatened, contact security staff and provide substantiating evidence to support your claims." Although the signature for this response is illegible, the response was signed on February 16, 2005. This response shows that prison officials responded to Smith's concerns by changing his housing assignment. The record though does not contain any evidence that Smith contacted security staff. Together, this evidence indicates that the defendants investigated Smith's concerns and that they reacted to those concerns by changing Smith's housing assignment to protect him.

The record also contains an offense report documenting a March 16, 2005 fight between Smith and another inmate. This incident is the one in which Smith maintains he was attacked by a member of the Mandingo Warriors because he had not removed his Mandingo Warrior tattoo. Smith was disciplined as a result of that incident. He appealed the disciplinary action in a Step I grievance he filed on March 23, 2005. Unsatisfied with the results of his grievance, he filed a Step II grievance on May 2, 2005. The response to that appeal reads in relevant part as follows: "An investigation was initiated by this office regarding your allegations. The investigation found that you were transferred to the Polunsky Unit on April 22, 2005 which has resolved your allegations of physical harm from another offender."

The defendants maintain that their evidence demonstrates that they acted reasonably in response to Smith's concerns by initially changing his housing assignment to separate Smith from the cell-mate that purportedly attacked Smith on November 5, 2004 and by transferring him to another unit after the March 16, 2005 incident. The defendants' summary judgment evidence does not suggest deliberate indifference. As a result, Smith must produce evidence that raises a genuine issue of material fact about whether defendants Mariscal, Bagby, Grimes and Nunn acted

11

with deliberate indifference to survive summary judgment.[10] To meet this burden, Smith "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."[11] Smith has presented no evidence that raises a question of fact about the reasonableness of the defendants' actions. The evidence shows that the defendants acted to protect Smith from harm even though harm may not have been averted. Thus, defendants Mariscal, Bagby, Grimes and Nunn are entitled to summary judgment on Smith's failure-to-protect claims.

### Smith's Claims about the GRAD Program

The defendants also ask for summary judgment on Smith's cause of action about the GRAD program; however, that claim was disposed of by my earlier order. In his complaint, Smith alleged the following: "Plaintiff had asked to enter the "Gang Renunciation and Disassociation," better known as the G.R.A.D. program, and was told by TDCJ-CID that this is for whites and mexicans, and not blacks." Smith further alleged that "[t]he actions of the John Doe defendants in Huntsville for denial of enrollment in G.R.A.D. program constituted a violation of the Plaintiff's [sic] 14th Amendment of the Equal Protection Clause - Racial Discrimination." The only defendants that Smith's complaint identified in Huntsville are John Does. Thus, the complaint indicates that Smith's allegations about the GRAD program apply to

---

[10] *See Farmer*, 511 U.S. at 837 (stating "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

[11] *Farmer*, 511 U.S. at 842.

John Doe defendants.[12]  I dismissed Smith's claims against John Doe defendants in my previous order.  Consequently, no basis exists for summary judgment on Smith's cause of action under the Equal Protection Clause because those claims are no longer viable.

## Order Regarding Smith's Claims against Jaramillo

With this motion resolved, the only claims that remain in this case are claims against defendant Jaramillo.  On September 19, 2005, I directed the Clerk of the Court to serve the summons and a copy of Smith's complaint by certified mail on all defendants.  The Clerk prepared a summons using the address from Smith's complaint.  The summons was addressed to "Ms. Jaramillo - Guard, Connally Unit, 899 FM 632, Kenedy, Texas 78119."  The summons was returned to the Clerk on October 24, 2005, marked "RTS no longer employed."  Consequently, Jaramillo has never entered an appearance in this case.  Because I cannot dispose of this case until the claims against Jaramillo are resolved, I DIRECT the Texas Attorney General to file an advisory under seal on or before November 10, 2006 advising me of the last known address of Jaramillo.  Upon receipt of the advisory, I will direct the United States Marshal to effect service on Jaramillo.

## Conclusion

After considering the defendants' motion for summary judgment (docket entry #50), it is ORDERED that the motion is GRANTED and SUMMARY JUDGMENT ENTERED in favor of defendants Easely, Clinkscale, Marton, Bagby, Mariscal, Haskins, Baker, Zeller, Grimes, and Nunn on Smith's failure-to-protect claims.

---

[12]In various other pleadings, Smith refers to John Doe defendants when discussing his complaints about the GRAD program.

Additionally, I DIRECT the Texas Attorney General to file an advisory under seal on or before November 10, 2006 with defendant Jaramillo's last known address.

IT IS SO ORDERED.

**SIGNED** on October 25, 2006.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE