UNITED STATES DISTRICT COURT
WESTERN DISTRICT of TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES RUSSELL SMITH, § | | |
| TDCJ No. 620944, § | | |
| § | | |
| Plaintiff, § | | CIVIL ACTION |
| v. § | | |
| § | | No. SA-05-CA-713-NSN |
| MARISSA JARAMILLO, § | | |
| § | | |
| Defendant § | | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff James Russell Smith's 42 U.S.C. § 1983 Civil Rights Complaint (Docket Entry No. 3) and Defendant Marissa Jaramillo's Motion for Summary Judgment (Docket Entry No. 78).

I previously dismissed Plaintiff Smith's claims against the other defendants. (Docket Entry Nos. 42 and 53). Plaintiff Smith's claims were detailed in those previous orders.

Plaintiff Smith is a Texas prisoner in the custody of the Texas Department of Criminal Justice (TDCJ) Institutional Division. Plaintiff alleges that while he was incarcerated at the Connally Unit, Defendant Marissa Jaramillo, a prison guard, failed to protect him from being assaulted and injured by two alleged members of the Mexican Mafia on August 30, 2003. In particular, he alleges that Defendant Jaramillo conspired to harm him by instigating Mexican Mafia inmates to attack him. Plaintiff seeks monetary damages. Plaintiff contends his problems with Defendant Jaramillo began when she opened cell doors and permitted other inmates to leave their cells but would not allow Plaintiff to leave his cell. Plaintiff claims the problem escalated within a few weeks to the point at which he was attacked.

Defendant Jaramillo has filed a motion for summary judgment. She argues that the Eleventh

Amendment immunizes her from claims brought against in in her official capacity for money damages. Defendant Jaramillo also asserts the defense of qualified immunity with respect to Plaintiff's claims against her in her individual capacity.

### I.  Summary Judgment Standard

A party is entitled to summary judgment pursuant to FED. R. CIV. P. 56(c) where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A party against whom summary judgment is sought may not rest on the allegations or denials of his pleadings, but must come forward with sufficient evidence to demonstrate a "'genuine issue for trial.'"[1] A dispute concerning a material fact is "genuine" and sufficient to overcome a summary judgment motion "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2] Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[3]

### II.  Monetary Claim for Damages in Official Capacity

Defendant contends Plaintiff's suit for damages against her in her official capacity is barred by the Eleventh Amendment. Because the States enjoy sovereign immunity from suit for money damages under the Eleventh Amendment, and because a suit against a State official in his official

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[2] *Id*.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

2

capacity is in effect a suit against the State the official represents, neither a state nor state officials sued in their official capacity are "persons" subject to suit under § 1983 when monetary relief is sought.[4] Therefore, Plaintiff has no claim for damages against Defendant in her official capacity.

### III.  Qualified Immunity in Individual Capacity

#### A.  Standard

Qualified immunity extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] Determination of qualified immunity claims requires a two-step analysis: whether plaintiff has shown a violation of a constitutional right and whether the constitutional right allegedly violated was clearly established at the time the events in question occurred.[6] When a qualified immunity defense is raised, it is the plaintiff's burden to present specific facts sufficient to overcome the defense.[7]

#### B.  Burden in a failure-to-protect claim

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."[8] "A prison official's 'deliberate indifference' to a

---

[4] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69-71 & n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

[6] *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996).

[7] *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

[8] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citation omitted); *see Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

substantial risk of serious harm to an inmate violates the Eighth Amendment."[9]  An official is deliberately indifferent to a substantial risk of harm to an inmate if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[10]  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ."[11]

### C. Defendant's motion for summary judgment

Defendant Jaramillo notes that Plaintiff alleges he put Defendant Jaramillo on notice of the future threat in his Step 1 grievance #2003224045.  However, Defendant points out that grievance did not identify anyone who had threatened Plaintiff Smith, nor does it refer to any threat.  Defendant asserts it was not until after the August 30, 2003, altercation that Plaintiff submitted a Step 2 grievance (appeal) of the denial of the Step 1 grievance, wherein Plaintiff complained that Officer Jaramillo had a history of hiding inmate beatings[12] by gang members and that he had been threatened by a member of the Mexican Mafia for turning in Officer Jaramillo to her superiors.  Defendant argues Plaintiff did not identify who was threatening him and did not provide any details that would have given Defendant Jaramillo notice of a threat and a need for protection.

---

[9]  *Id*. at 828.

[10]  *Id*. at 837.

[11]  *Id*. at 842.

[12]  The grievance is not completely clear, but it appears to allege Defendant Jaramillo had a history of "having inmates beaten."

Defendant further notes that in another Step 1 grievance, #2004002350, submitted after the incident of August 30, Plaintiff Smith alleged that Defendant Jaramillo had ties to the Mexican Mafia. Also in that grievance, Plaintiff Smith asserted Defendant Jaramillo told him she had spoken with the leader of the M.W.'s (Mandingo Warriors) about Plaintiff "getting in her business and writing her up." Plaintiff alleged he told her that the Mandingo Warriors do not "call my shots." Plaintiff contends Defendant Jaramillo replied, "That's alright I bet you will get yours."

Defendant also points out that in Plaintiff's subsequent Step 2 appeal, Plaintiff contended he was threatened by members of the Mexican Mafia on August 17, 2003. Plaintiff also alleged in that Step 2 grievance that he was threatened by Defendant Jaramillo on that date. Defendant Jaramillo argues that this was Plaintiff's first claim that a threat was made against him from members of the Mexican Mafia. Defendant maintains the description of the alleged threat was vague and Plaintiff did not identify anyone in particular, other than claiming to have generally received threats from members of the Mexican Mafia.

Defendant Jaramillo argues that the grievances do not show Defendant had any knowledge about threats against Plaintiff by inmate Vela (or Vale) or by anyone else prior to the August 30 incident. Consequently, Defendant asserts Plaintiff failed to establish facts showing Defendant Jaramillo was on notice of a well-founded, particularized threat against Plaintiff and that Defendant failed to protect him from such a threat. Defendant concludes that Plaintiff has not shown she violated any of his constitutional rights.

Defendant Jaramillo also contends that even if there was a violation of Plaintiff's constitutional rights, Defendant's actions were objectively reasonable. She asserts it is reasonable to give an inmate a disciplinary case for failing to obey an order; and it is reasonable to open cell doors to allow

some inmates to exit their cells, but to prohibit another inmate from leaving his cell, which relates to the incident allegedly giving rise to the problem between Plaintiff and Defendant Jaramillo.

### D. Summary judgment evidence

This Court previously observed in the Memorandum Opinion and Order of July 13, 2006 (Docket Entry #42) that in response to interrogatories from this Court, Plaintiff Smith claims that Defendant Jaramillo conspired to harm him by instigating Mexican Mafia inmates to attack him, and that in response to her orchestrations, two Mexican Mafia inmates assaulted him on August 30th by stabbing him in the head. In Plaintiff Smith's verified answers to this Court's interrogatories, he avers that on August 10, 2003, he was approached by inmate Vela, a member of the Mexican Mafia. Vela told Smith that his "homegirl," Jaramillo, said that she was instructed that since she wrote up Smith for leaving his cell, she would have to write up Vela for coming out of his cell. Vela told Smith that if Jaramillo was made to write him up, then "I know what time it is." Smith claims he tried to talk with Jaramillo, but she said her "homeboys "were going to "take care of [Smith's] black ass." Plaintiff Smith was allegedly attacked on August 30.

According to Plaintiff Smith's averred allegations, Defendant Jaramillo would have been on notice of a well-founded, particularized threat against Plaintiff and Defendant failed to protect Smith from such a threat, because Jaramillo orchestrated the attack. Because of Defendant Jaramillo's own alleged conduct and personal involvement in the attack on Plaintiff, notice to Defendant Jaramillo about the threat was not dependent on Plaintiff Smith's allegations in grievances.

Plaintiff Smith's sworn statements raise a material issue of fact concerning whether Defendant Jaramillo failed to protect him due to Defendant's orchestration of the attack by inmates upon

Plaintiff, thereby precluding summary judgment for Defendant Jaramillo.[13]

### IV.  Conclusion

Therefore, **Defendants' Motion for Summary Judgment (Docket Entry # 78) is GRANTED IN PART and Plaintiff Smith's claims against Marissa Jaramillo in her official capacity are DISMISSED; the Motion for Summary Judgment is DENIED IN PART as to Plaintiff Smith's claims against Defendant Jaramillo in her individual capacity**.

This case is presently set for trial in January 2008.  The Court is in the process of evaluating whether to appoint counsel for plaintiff for purposes of trial.  The parties are advised that if counsel is appointed I will entertain a motion for short continuance of the trial date.

**IT IS SO ORDERED**.

**SIGNED** on December 18, 2007.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[13] *See Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (plaintiff's sworn statement that officer gratuitously and maliciously choked him causing dizziness, loss of breath, and coughing precluded summary judgment).